**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

ANITA P. GASTON,

Plaintiff, CASE NO. 2:22-cv-14115-KMM

v.

CENTURY LENDING II, INC.,

Defendant.

_______________________________________/

**MOTION TO DISMISS CENTURY LENDING II, INC.'S COUNTERCLAIM PURSUANT TO FED. R. CIV. P. 12(b)(1) & MEMORANDUM IN SUPPORT**

Now Comes Plaintiff/Cross-Defendant, ANITA P. GASTON ("Gaston"), by and through the undersigned, and pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, hereby moves to dismiss the Counterclaim [Dkt. 10] filed by Defendant/Cross-Plaintiff CENTURY LENDING II, INC. ("Century") for lack of subject matter jurisdiction, and in support thereof, states as follows:

## I. INTRODUCTION

Gaston has filed suit pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*., the Florida Consumer Collection Practices Act ("FCCPA") pursuant to Florida Statutes §559.55, as well as Invasion of Privacy ("IOP"), and Trespass to Chattels ("TTC"). Federal jurisdiction exists over Gaston's claims pursuant to 28 U.S.C. §§ 1331 and 1337.

The TCPA is a federal law that prohibits any entity from calling another person's cellular phone using an automatic telephone dialing system ("ATDS") *or* prerecorded messages unless the called party has previously provided the caller with his or her consent to do so. The TCPA further allows a called party to revoke any previously granted consent. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7993-94

(2015) ("2015 FCC Order"); *see also ACA Int'l v. FCC,* No. 15-1211, 2018 U.S. App. LEXIS 6535. *4-5 (D.C. Cir. March 16, 2018) ("We uphold the [FCC's] approach to revocation of consent, under which a party may revoke her consent through any reasonable means clearly expressing a desire to receive no further message from the caller").

Gaston claims that Century called her cellular telephone in violation of the TCPA by repeatedly and persistently calling her phone after she told representatives of Century to stop calling her to collect a debt. [Dkt. 1, Complaint, ¶¶ 9-20]. Century has answered the Complaint and has raised a breach of contract counterclaim. [Dkt. 10, Counterclaim]. Century's counterclaim does not comply with Fed. R. Civ. P. 8 as it failed to include a short and plain statement of the Court's grounds for jurisdiction. Century does not allege that the Court has original jurisdiction over its state law breach of contract claims, nor otherwise allege that the parties are diverse of citizenship and the amount of controversy requirement is met. Therefore, the Court lacks an independent jurisdictional basis over Century's counterclaim.

As discussed below, because Century's Counterclaim does not arise out of the same common nucleus of operative facts as Plaintiff's TCPA claims, the Court lacks supplemental jurisdiction over Defendant's counterclaim. As such, the Court should dismiss Century's counterclaim pursuant to Fed. R. Civ. P. 12(b)(1).

## II. RELEVANT FACTUAL ALLEGATIONS

As to Century's counterclaim, it is alleged that, on or about May 31, 2019, Gaston entered into a simple interest motor vehicle contract and security agreement ("Agreement"). [Counterclaim, ¶ 2]. Century further alleges that, after a series of transfers, it now holds all right, title, and interests in the Agreement. [*Id.* ¶ 3]. Additionally, Century contends that pursuant to the Agreement, Gaston has defaulted and is now personally liable for approximately $6,798.06. [*Id.* ¶ 5].

While the *true reasoning* behind Century's filing of the Counterclaim is clear – the Counterclaim is meant to "counter" the TCPA claims Plaintiff has brought, it is clear that the Counterclaims are nothing more than a retaliatory strike to force Plaintiff to settle her TCPA

lawsuit. As discussed below, this Court should dismiss Century's Counterclaim because they are neither compulsory nor properly brought as a permissive counterclaim.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994).

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citations and internal quotation marks omitted). A court *may* have supplemental jurisdiction in any action where the a court has original jurisdiction – for instance – where a federal cause of action is alleged where the counterclaims "are so related to claims in the action within such original jurisdiction that they form part of the *same case or controversy* under Article III of the United States Constitution." 28 U.S.C § 1367(a) (emphasis supplied). Section 1367 provides district courts discretion to decline supplemental jurisdiction in certain cases, including under "exceptional circumstances" where "there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4).

## IV. ARGUMENT

### A. Defendant's Counterclaims Should Be Dismissed Because They Are Not Compulsory in Nature

While it appears that Century called Gaston's cellular phone with prerecorded messages in an effort to collect the subject debt, the purported validity of the subject debt and Gaston's alleged failure to pay off the subject debt is *immaterial* to the validity of Gaston's TCPA claims. For purposes of proving her TCPA claim, the amount and character of Gaston's debt does not in any way impact her ability to assert at TCPA violation or recover under the Act. In fact, the purpose behind the enactment of the TCPA was to protect consumers from unwanted auto-dialed calls.

In enacting the TCPA, Congress found that "unrestricted telemarketing can be an intrusive invasion of privacy" and are a "nuisance." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012). As explained by the Supreme Court, "[v]oluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims*, 132 S. Ct. at 744.

Congress stated that "[t]he evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." Telephone Consumer Protection Act of 1991, Pub. L. 102–243, §§ 2, ¶¶ 5, 10, 12, 13, 105 Stat. 2394 (1991). Congress also wrote, "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. *Id*. at § 11.

Pursuant to Federal Rule of Civil Procedure 13(a)(1)(A), a compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). "[A]ny claim that is not compulsory" is permissive. Fed. R. Civ. P. 13(b). To determine whether a claim is permissive or compulsory, courts look to the "logical relation" test, which sets a loose standard permitting a broad interpretation in the interest of avoiding a multiplicity of suits and fairness to parties.

A logical relationship exists "when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the *same operative facts* serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant." *Mattel, Inc v. MGA Entm't, Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013) (quoting *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1196 (9th Cir. 2005)) (emphasis supplied). As discussed below, Century's Counterclaim does not arise from the same aggregate set of operative facts as Gaston's claim for illegally dialed robo-calls. Instead, Century is merely bringing counterclaims regarding a defaulted debt under breach of contract.

*Castillo v. J.P. Morgan Chase Bank, N.A.,* No. 19-cv-04905-HSG, 2020 U.S. Dist. LEXIS 15804 (N.D. Cal. Jan. 30, 2020) is directly also on point. In *Castillo*, the Court addressed a TCPA-

plaintiff's motion to dismiss the defendant's various contract-based state law counterclaims. *Id.* In discussing the operative facts underpinning each respective claim, the Court compared the elements of the plaintiff's TCPA claims with the defendant's various state-law claims. In doing so, the Court noted:

> To understand the operative facts for Plaintiff's TCPA claim, the Court finds it instructive to look at its elements. The three element of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipients prior express consent.
>
> * * *
>
> In contrast, the Defendant's counterclaim all involve the parties' credit agreement and validity of the underlying debt. To establish a breach of contract counterclaim, Defendant must prove (1) the existence of a contract; (2) its performance or excuse for nonperformance; (3) Plaintiff's breach of the contract; and (4) the resulting damage to Defendant. . . . In short, the counterclaims will require proof of different facts, involve different witnesses, and apply different law. They do not, therefore, derive from a common nucleus of operative fact.

*Id.* at *7-9; *see also, Ensz v. Chase Bank United States N.A.*, No. 18-cv-2065-CJW-MAR, 2019 U.S. Dist. LEXIS 2148, at * 2-6 (N.D. Iowa Jan. 7, 2019).

The Southern District of Florida also reached the same conclusion in *Bianchi v. Nationwide Credit, Inc.*, 2012 U.S. Dist. LEXIS 196099 (S.D. Florida Dec. 14, 2012). The Court in *Bianchi* focused on the fact that a consumer's TCPA claims and a creditor's breach of contract claims involve different facts and evidence.

> [T]he Court does not find that the counterclaims arises out of a common nucleus as it do not rest upon the same set of operative facts. Rather, the essential facts of Plaintiff's and American Express' respective claims appear to have nothing to do with each other, apart from the incidental fact that the debts American Express seeks to collect under the contracts are the same debts for which Defendants are allegedly violating the TCPA in their collection efforts. Plaintiff's TCPA claim and American Express' breach of contract claims involve different facts and evidence, and the commonality of the alleged underlying debt is insufficient to

> provide a basis for jurisdiction. As such, the Court lacks subject matter jurisdiction over American Express' counterclaims for breach of contract and will dismiss them accordingly.

*Id.* at * 7.

Therefore, it is plain that Century's breach of contract counterclaim is permissive in nature. It would require entirely separate and distinct operative facts as Gaston's TCPA claims. *See e.g., Castillo,* 2019 U.S. Dist. LEXIS 2148 at *5; *Ensz,* 2019 U.S. Dist. LEXIS at *6; *Gonzalez v. Chase Bank USA N.A.*, 2018 U.S. Dist. LEXIS 92287, *8 (S.D. Cal. June 1, 2018); *Salas v. Ford Motor Credit Co., LLC*, No. 1:18-CV-748-RP, 2019 U.S. Dist. LEXIS 57182, at *7 (W.D. Tex. Apr. 3, 2019) ("The Court finds that there is not a logical relationship between whether Salas consented to be autodialed (or was in fact autodialed) and whether she made the contractually required payments for her car."). The Court should therefore find Century's Counterclaim to be permissive in nature.

**B. The Court Does Not Have Supplemental Jurisdiction over Century' Permissive Counterclaims**

Since Century's breach of contract counterclaim is permissive in nature,[1] "[t]he key question before the Court . . . is whether these permissive counterclaims are 'part of the same case or controversy' as the TCPA claim such that supplemental jurisdiction is appropriate." *Castillo,* 2020 U.S. Dist. LEXIS 15804 at *5. State law claims form part of the "same case or controversy" as a federal claim when "they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." *Id.* at *4 (citing *Kuba v. 1-A Agr. Ass'n,* 387 F.3d 850 (9th Cir. 2004). As alluded to above and unpacked further below, the Court should conclude that Century's breach of contract counterclaims do not form part of the same case or controversy as Gaston's TCPA claims, and therefore dismiss such counterclaims for lack of subject matter jurisdiction.

[1] And assuming 28 U.S.C. § 1367 even extends to permissive counterclaims. *See Castillo,* 2020 U.S. Dist. LEXIS 15804 at *5, n.2.

In *Castillo*, the Court dismissed a TCPA-defendant's breach of contract counterclaim pursuant to Fed. R. Civ. P. 12(b)(1) finding that such counterclaims did not form part of the same case or controversy as the plaintiff's TCPA claims. *Id.* at *9. The Court declined to follow the defendant's various articulations of why some factual overlap and connection between affirmative defenses and claims are sufficient to establish supplemental jurisdiction, instead focusing its analysis on claims' elements and whether such *claims* shared a common nucleus of *operative* fact. *Id.* at *5-9.

As discussed above, the Court's analysis of the elements of the respective claims in *Castillo* led to the conclusion that "[i]n short, the counterclaims will require proof of different facts, involve different witnesses, and apply different law. They do not, therefore, 'derive from a common nucleus of operative fact,' **and are not part of the same case or controversy.**" *Id.* at *9 (emphasis added).

The same result is warranted here. Much like the respective claims at issue in *Castillo,* Century's breach of contract counterclaims do not arise out of a common nucleus of operative fact as Gaston's TCPA claim. The operative facts necessary for the respective parties to establish their claims are wholly distinct and rely on different facts, involve different witnesses, and apply different law. As such, Century's counterclaim is not part of the same case or controversy as Gaston's TCPA claims, in turn underscoring why Century's counterclaim should be dismissed in its entirety.

Decisions from across the country further underscore how Century's counterclaims do not form part of the same case or controversy as Gaston's TCPA claim.

The court in *Ensz,* reaching the same conclusion as the court in *Castillo,* rejected the defendant's argument that "there is a common nucleus of operative facts because the calls that plaintiff alleges violated the TCPA were made for the purpose of collecting the debt that defendant seeks to recover in its counterclaims." *Ensz,* 2019 U.S. Dist. LEXIS 2148. at *10. According to the district court, "numerous courts have compared the elements of a *TCPA* claim and the defendant's *counterclaims* to collect the underlying debt, and those courts have held that the

*counterclaims* do not form a part of the same case or controversy." *Id.* at *10-*11 (citations omitted). The district court in *Ensz* ultimately focused on the elements of the respective claims,

> [E]ach of defendant's counterclaims requires that defendant prove the existence of an express or implied agreement between the parties, that plaintiff incurred a debt to defendant pursuant to that agreement, that defendant failed to repay the debt, and the amount owed.
>
> The elements of plaintiff's TCPA claim are: (1) defendant called plaintiff's cellular telephone number, (2) using an automatic telephone dialing system or an artificial or prerecorded voice, (3) defendant did not make the calls for emergency purposes, and (4) defendant made the calls without plaintiff's prior expres consent. *Ammons*, 305 F. Supp. 3d at 823 (citing 47 U.S.C. § 227(b)(1)(A)(iii)). Plaintiff's TCPA claim is not premised on the existence or validity of any underlying agreement with, or debt to, defendant. Accordingly, defendant's counterclaims do not derive from the same common nucleus of operative facts as plaintiff's TCPA claim. Therefore, the Court finds that it does not have supplemental jurisdiction over defendant's counterclaims under Section 1367(a).

*Id.* *14-*15 (remaining citations omitted).

*Ensz* is not alone in this stance, the Western District of Texas addressed this same issue in *Salas v. Ford Motor Credit Co., LLC*, No. 1:18-CV-748-RP, 2019 U.S. Dist. LEXIS 57182 (W.D. Tex. Apr. 3, 2019). In *Salas,* the plaintiff filed suit for alleged violations of the TCPA. In response, the defendant filed a counterclaim for breach of contract, in an attempt to recover an outstanding balance owed on the automobile. In *Salas,* the court dismissed the defendant's counterclaim, finding it to be permissive in nature, stating, "the claim and counterclaim turn on distinct sets of facts that relate to separate provisions in the auto loan contract. The Court finds that there is not a logical relationship between whether Salas consented to be autodialed (or was in fact autodialed) and whether she made the contractually required payments for her car." *Salas*, U.S. Dist. LEXIS 57182, at *7.

The district court in *Riazi v. Ally Financial, Inc.*, 2017 U.S. Dist. LEXIS 157011 (E.D. Mo. Sep. 26, 2017) arrived at the same conclusion; ultimately holding, for much of the same reasons echoed in the above authority, that that the plaintiff's TCPA claim and the defendant's

breach of contract counterclaim are not derived from a common nucleus of operative facts; and therefore, the court did not have supplemental jurisdiction over the breach of contract related counterclaim. *Id.* at *13; *see also e.g., Ramsey v. GM Fin. Co.*, 2015 U.S. Dist. LEXIS 143650, 2015 WL 6396000, at *2 (M.D. Tenn. Oct. 22, 2015) ("Although Plaintiff's [TCPA] claim, from a broad perspective, arose from the underlying debt upon which Defendant sues, a closer look reveals that the operative facts from which Plaintiff's federal claim arose are separate and different from the operative facts from which Defendant's state law [breach of contract] claim arose.").

Thus, the Court should follow the holding in *Castillo* and the litany of cases across the country and dismiss Century's counterclaim for lack of subject matter jurisdiction.

**C. Allowing Defendant's Counterclaim Will Chill This and Future TCPA Claims**

Even if the Court were to find that supplemental jurisdiction existed over Century's breach of contract counterclaim, it should nevertheless decline to exercise such jurisdiction pursuant to 28 U.S.C. § 1367(c)(4) due to the chilling impact such retaliatory counterclaims have on TCPA litigants.

As noted in *Castillo,* "even if the Court were to find that the counterclaims form part of the same case or controversy as the TCPA claim, the Court finds that exceptional circumstances exist to decline to exercise supplemental jurisdiction." *Castillo,* 2020 U.S. Dist. LEXIS 15804 at * 9-10. The Court noted that, whereas the TCPA is not a fee-shifting statute, the defendant's breach of contract counterclaim sought attorney's fees, pre-judgment interest, as well as principal and unpaid interest. *Id.* at *10. The Court went on to state "[t]he amount of attorneys' fees for a case in federal court could easily eclipse the amount of the underlying debt. And the specter of such fees could deter future plaintiffs from filing TCPA actions." *Id.* Because the TCPA is designed "'to protect privacy rights' irrespective of the reason for such calls" the Court in *Castillo* declined to exercise supplement jurisdiction over the defendant's counterclaim (even if were otherwise warranted, which it were not).

The district court in *Ensz* similarly found that declining to exercising supplemental jurisdiction would avoid "the potential chilling effect of defendant's counterclaims on future TCPA claims warrant the Court declining supplemental jurisdiction." *Ensz,* 2019 U.S. Dist. LEXIS 2148 at *17. According to the court, "[a]llowing a defendant to bring counterclaims against plaintiff has a chilling effect on future TCPA claims, which 'clearly undermine[s] the remedial purpose of the TCPA and its goal of protecting consumers from unwanted automated telephone calls and of 'curbing calls that are a nuisance and invasion of privacy.'" *Id*. (citations omitted). The *Ensz* court's rationale underpinning its decision is in line with the Court's decision in *Castillo. Id.* *18-*19. According to the court, "[t]he mere possibility that the case will result in a judgment against plaintiff creates a chilling effect that undermines the remedial purpose of the TCPA . . . . and constitutes an exceptional circumstance permitting the Court to decline jurisdiction under Section 1367(c)(4)." *Id* at *19.

Exercising supplemental jurisdiction over Century's breach of contract counterclaim would have a chilling effect on consumers' decisions to vindicate their rights under the TCPA in much the same ways identified in *Castillo* and *Ensz.* The Court should follow its prior decisions and find that, even if there were a basis to exercise supplemental jurisdiction over Century's breach of contract counterclaim, exceptional circumstances counsel in favor of declining to exercise such supplemental jurisdiction under 28 U.S.C. § 1367(c)(4).

Furthermore, courts within the Ninth Circuit have generally indicated the extent to which allowing counterclaims to proceed in the consumer-collection context has a chilling effect on consumer litigants, regardless of whether consumers may be able to recoup their attorneys' fees.. *See e.g., Sparrow v. Mazda American Credit*, 385 F.Supp.2d 1063 (E.D. Cal. 2005). The court in *Sparrow* declined to exercise jurisdiction over the counterclaim collection action (in the FDCPA context) based upon public policy factors:

> Even if supplemental jurisdiction exists over Defendant's counterclaims, a court may decline to exercise that jurisdiction where compelling reasons exist. In a case such as this one, strong policy reasons favor declining to exercise jurisdiction. As the

> court states in *Leatherwood* [115 F.R.D. 48 (W.D.N.Y. 1987)], allowing a debt collector to bring an action for the underlying debt in a case brought under the FDCPA may deter litigants from pursuing their rights under that statute.
>
> [T]o allow a debt collector defendant to seek to collect the debt in the federal action to enforce the FDCPA might well have a chilling effect on persons who otherwise might and should bring suits such as this…Given the remedial nature of the FDCPA and the broad public policy it serves, federal courts should be loath to become immersed in the debt collection suits [brought by] the target of the very legislation under which a FDCPA Plaintiff states a cause of action. 111 F.R.D. 48, 50 (W.D.N.Y. 1987).

*Sparrow,* 385 F.Supp.2d 1063 at 1070-1071 (some internal citations omitted).

The reasoning of the authority cited herein applies directly to the instant matter, and allowing Century to litigate its collection action in Federal court would run contrary to the TCPA's public policy of protecting the privacy interests of telephone subscribers, and would dissuade consumers who owe an alleged debt from seeking to enforce their rights under the TCPA. Accordingly, this Court should decline jurisdiction over Century's counterclaim even if it determines that it has supplemental jurisdiction.

## V. <u>CONCLUSION</u>

Century's state law breach of contract counterclaim does not form part of the same case or controversy as Gaston's TCPA claims. Gaston's TCPA claims, which underpin the Court's subject matter jurisdiction, will require entirely different factual proof, different witnesses, and application of different law in order to determine the parties' respective rights and obligations. As such, there is no common nucleus of operative fact between Gaston's TCPA claims and Century's retaliatory counterclaim, in turn illustrating the complete absence of supplemental jurisdiction under 28 U.S.C. § 1367. Even if the Court were to determine that supplemental jurisdiction were appropriately exercised, it should nevertheless decline to exercise such supplemental jurisdiction due to the strong public policy considerations favoring the maintenance, rather than chilling, of consumers' vital Century to the federal court system.

Dated: May 20, 2022

By: */s/ Alejandro E. Figueroa*
Alejandro E. Figueroa
**SULAIMAN LAW GROUP, LTD.**
2500 S. Highland Avenue
Suite 200
Lombard, Illinois 60148
Telephone: (630) 575-8181 x.120
Facsimile: (630) 575-8188
E-mail: alejandrof@sulaimanlaw.com
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 20, 2022, copies of the foregoing **MOTION TO DISMISS CENTURY LENDING II, INC.'S COUNTERCLAIM AND MEMORANDUM IN SUPPORT** was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's EM/ECF System.

*/s/ Alejandro E. Figueroa*
Alejandro E. Figueroa
**SULAIMAN LAW GROUP, LTD.**
2500 S. Highland Avenue
Suite 200
Lombard, Illinois 60148
Telephone: (630) 575-8181 x.120
Facsimile: (630) 575-8188
E-mail: alejandrof@sulaimanlaw.com
*Attorney for Plaintiff*